Okay, we're happy to hear argument in our second case in re-application of Newbrook Shipping Corporation. Mr. Walsh. Good afternoon, your honors. May it please the court. We are here to argue about a discovery matter that's basically been involved in global litigation. The parties that originally were involved in this case are companies that are involved in litigation in South Africa, involving the arrest of two separate vessels over there, as well as arbitration in Singapore. During the course of the second one of those arrest proceedings, they've brought the appellees in this case, have brought this litigation to the United States Shores, attempting to get some additional discovery in this case from one of the agents of Nadella, which is the other party in the cases that are pending in South Africa and in Singapore. They've tried to use a tactic that's provided under the United States Code under Section 1782 in order to obtain this discovery. And it's got various, 1782 has various different restrictions on it in terms of what is allowed and how you can use that in order to get discovery for a foreign proceeding. One of the big issues that the petitioner has to do in order to qualify under 1782 is they have to be able to demonstrate that the information that they're obtaining for this, through this proceeding under 1782, that it is asked by a person, an interested person in one of those foreign proceedings, that they're seeking information from a party or a person who is in this district, meaning in this case, the District of Maryland. And one of the third things is they have to make sure that the discovery is for use in that foreign proceeding. What we have in this particular situation is we have a company in this case, the appellees, who are seeking to obtain information, not from a party that is in this district, but they're seeking to obtain information about the party that's involved in the foreign proceedings in another country, in South Africa and in the Singapore litigation. That's Nadella. Basically, what we have is a situation where the courts have been pretty clear that the person that you're seeking the information from has to be in this district, and the court doesn't just look at the identity of the person that's identified on the subpoena. You go behind that and see who's the real party in interest in this case. The real party in interest in this case, undeniably, is Nadella, which is the corporation that's involved in the South Africa. Nadella is not in this district. They are seeking information from GMS, which is the registered agent of Nadella. In this particular case... Counsel, just to make sure that I understand the framing, because I understand there to be two different steps. 1782 has some threshold requirements, and you've named those off. And then there's a separate set of sort of balancing factors under Intel, as I think most people refer to it. This real party in interest idea seems to show up more in the Intel analysis in the cases that I've seen from our fellow circuits, and not in this sort of first step about whether the party is in the district. That that is the more formalistic requirement that the person listed on the subpoena is in the district, and that the Intel analysis is where we get to this real party in interest kind of inquiry. Is that not the right way to think about this? That is one way. There are decisions, Your Honor, where they say that it is part of... You're looking, when you're trying to assess whether they're in the district, you are trying to assess whether they are the real party in the interest. But you are correct. There are a handful of cases, I believe we cited them in our brief, that mention the fact that it still falls under the 1782 factor as to whether they're in this district or not. And in this particular case, whether you cover it under the Intel factors or whether you cover it under the 1782 threshold matter, the reality is the discretion clearly exists that the party that's in interest here, the party that they're seeking the information from, clearly and undeniably is Nadella, which is not in this district. So whether you consider it under 1782 or whether you consider it under those Intel factors, they clearly have not rung the bell to suggest that that information is appropriate in this district or that that party is certainly not in  Can I ask one other just factual clarification? There's a lot of a record here and I had one factual question. I want to make sure that I understood. There's been this recent South African decision that included a number of things, but one of them was a request for discovery from Nadella that the South African court denied. Did that request overlap with the information that was requested here? I know it's not exactly the same, but was there an overlap of the information requested from the South African court and the information from Nadella that was requested in the 1782 action? I think there was, Ron. I think that's part of the point. Part of the issue in that recent decision was what happened was Nadella sort of reversed the idea on Apolis. Apolis were saying, well, you have to show that these vessels are related in some fashion in order to arrest them. And what Nadella did in that action was they filed an action. They filed a proceeding to say, give me discovery to support your contention that they are not related. So in that particular action, what was going on and what the court in the April 28th decision ultimately decided to do is they said, you've not produced any information, Apolis, that would ultimately demonstrate that there's no relation here. You're basically going on a fishing expedition at this point in time. But the information does clearly overlap because the question, as the court pointed out in that April decision, and we've also pointed out, was available to Apolis in the actions, in the South African actions, even independent of that, was the idea that the South African rules of procedure, especially maritime jurisdictions, clearly allowed for them to ask for this information. That they could have asked Nadella for all of the information that they sought in this proceeding, and they never did so. They could have asked Nadella in South Africa for the information that was held not only by Nadella, but by any of its agents, the same as the subpoena was here. They could have ultimately gotten to the same information, looking for the motivations of Nadella and ultimately trying to arrest those vessels and why it was that Nadella said that those two vessels were related. They did not do that. And that's the evidence that's before the court at this point in time that the district court, Judge Bredar, handled. And certainly the evidence that came up to the Fourth Circuit at this point is that all of that was available to them in that foreign proceeding. And that's a critical factor under Intel in looking at the whole concept of whether they can obtain it. We're not going to allow parties to come to the United States and use the United States system in order to go after discovery that's already available on foreign proceeding. It's already available to them over there, and they're just trying to find a way to circumvent what's already going forward on foreign soil. And in this particular case, because we've demonstrated through the record, we've demonstrated the rules of evidence. I'm sorry, the rules of discovery that existed in South Africa where they could have asked for information relevant to these issues that they're seeking here. There's no question that they could have done it there and that this proceeding is all about a way to circumvent that process. Mr. Walsh, is it your position that a 1782 proceeding can never be used against a non-party? I mean, I think that was the whole point of the remedial device is to allow for discovery when it might not otherwise be available. And I don't know that necessarily the test is that it needs to be exclusively available, but there may be other sources that might have a different, you know, aspect of the evidence that may be required. So it just strikes me that it seems you're advocating for a really narrow test when it comes to the use of this device. Well, Your Honor, I'm not suggesting that it couldn't be used in other circumstances. In this particular case, what we have is we have the benefit of the actual subpoena that the appellees served and that the appellees identify the information they were seeking and what they were seeking it for. The petition identifies that they were seeking this information strictly for the South African action to determine why Nadella believed that these two vessels were related. The subpoena that was issued undeniably only asks for information about Nadella's operations, about its shareholders, its board of directors. It asks information about who the ownership of Nadella was. The subpoena itself asks about the motivations that Nadella may have had. They're not going to relevant evidence at the end of the day. What they were seeking was information sort of biting on the edges of Nadella, trying to hope that in some fashion they could get underneath Nadella's hood and try and create other havoc and create undue burden in that case. It wasn't necessarily relevant to the issues involved at all. It was all about the ownership and the structure that Nadella had. Well, I'll grant you that a good bit of that is that you've described it accurately, but not all of it. There's some of the documents requested and some of the deposition topics deal directly with this question of, you know, the connection between the two ships and the like and the relationship between the two ships and the like and the intent or motive in arresting one or the other ships. That seems to me to be clearly relevant to the principal action. Now, there may be a host of other topics here that appear to be a fishing expedition, but with respect to those, are you saying that simply because the party at Asia and South Africa also may have relevant information that somehow you're cut off from inquiring whether other parties might have relevant information? I don't believe so, Your Honor, but part of the test also is determining whether you can go after that information in the foreign proceeding first or not. We don't want to. It's the whole idea is to not circumvent the process that another country may already have in place. And with respect to this particular discovery, questions as to intent and motive don't have to do with the issue as to whether wide particular vessels are related in any way or affiliated in any way. Intent and motive do not go to that issue. The only issue involved in the South African proceeding, which is not my determination, but it's what was in the petitioner's request, was that they were seeking evidence to find out why you're contending that these are related vessels. Give me the evidence to show why you believe that they're affiliated or related, because petitioner has said that's the basis through which it seeks this information. Asking about intent or motive or ownership certainly is not relevant. But I agree with you, Your Honor. There is one or two topics in there out of 24 topics and 24 document or 12 document requests that do ask, well, give me the evidence saying why you're related. But all of that evidence is. Let me, can I, maybe I'm not following, because the point of this, those are all asking about Nadella's belief or motive or information. But Nadella is a party to the South African action. Right. And so they're asking for GMS to provide information about Nadella's information and state of mind instead of asking Nadella for Nadella's information. I mean, it seems it seems odd here that they're asking a third party for information about what Nadella understood or why Nadella acted. I mean, that that's the rub to me is that they're using it is a non-party, but they're asking for party information. Isn't that the rub here? Well, I think that it is, Your Honor. That's the problem. And part of the issue is you can't go after a third party in order to get things that you can already get in a foreign jurisdiction. The whole idea is one of the factors in all this is making sure you're not putting an undue burden or pressure on the third party. And in this particular case, you're asking me about something that a third party is doing when the reality is they could have gone directly to Nadella. They had the ability to go directly to Nadella in South Africa where all these issues are being resolved. And they chose to not do that. Instead, they chose to circumvent that process, come to the United States and try to find a way to get that information from a third party here. I'm sorry to interrupt you, but just a follow up. So it appears that Judge Berdar seemed to understand that there was something else that may have been afoot here with respect to the scope of the discovery. And so he, as I understood his order, essentially said that to the extent that these documents are being sought to litigate in some other jurisdiction in Nevis and elsewhere, that he wouldn't allow it. But the problem with the order is that it really doesn't sufficiently narrow, make the distinction between the two actions. I was wondering if you all had gone back and sought clarification or an understanding of exactly what it was that was relevant to the South African action. Because I agree with, in part with Judge Richardson, that at least with respect to issues of intent and motive, it seems odd to ask a third party about that. But there are some, there is at least one document request, the very first one that talks about documents demonstrating a relationship, affiliation or connection between these two ships. And the fact that Adela might have some of that information doesn't mean that, at least as I understand it, that another another party might not also have relevant information on that topic. Your Honor, I'll give you a two part answer to sort of what I saw as a two part question. The reality is Judge Bedard did not go further and say, OK, well, I've carved out the Nevis. That's not relevant. So now we're just going to deal with what's relevant to the South African action. And the parties didn't do that either. In most part, the reason why the parties didn't do that was because the petition itself did that. When the petitioners filed their petition, they specifically called out what information they were looking at for the rejected, contemplated Nevis action. And they identified specifically what information they wanted relevant to the South African action. So they've already self-defined and identified what they believed was relevant from that standpoint. So it was very easy to go through and say, OK, well, this is no longer relevant. The issues relevant to ownership and that type of thing are no longer relevant, at least in our perception of everything, because Nevis action was gone. So then what are we, so what are the topics that you think are still in doubt or still a matter of controversy? Well, Your Honor, actually, I believe that everything is in controversy at this point. Most of that has to do with the fact that the April 28th ruling, the opinion of the South African court, pretty much foreclosed the idea that any of this information was relevant anymore. That the appellees had an opportunity in order to identify what it was that why they said there was not a relationship and they didn't do that in that action. The court said we're not receptive to that anymore. I see my time's up. I'm happy to answer further if necessary. I don't think so. We'll hear from you in rebuttal if you can serve some time. Ms. Finley? May it please the court. My name is Amanda Finley on behalf of the Appellees, Newbrook Shipping Corporation and Falcon Conference Shipping. There are two issues in this appeal. First, whether the district court abused its discretion in granting Section 1782 relief and denying appellant TMS's motion to quash the order. The abuse of discretion standard is set forth in this court's precedent in Enri Naranjo. The second issue raised on appeal was the issue of service of the 1782 subpoena, which appellees request that this court dismiss for lack of jurisdiction pursuant to this court's ruling in Naranjo, Bury v. Bury and Green v. Mills. As to the first issue, this court should affirm the district court's ruling for three reasons. First, the district court properly granted Section 1782 relief after reviewing all of the statutory requirements and making findings that they were satisfied in allowing appellees to obtain evidence. Counsel, can I can I go back to Judge Diaz's last question? He says that one of the things that might might be on its face be relevant is our documents about the ownership structure of the ship. Right. The the Falcon Confidence and Falcon, whatever it is. All right. But why why what basis in the record is there to believe that GMS would have any documents or information about the ownership of Newbrook or the various Falcon vessels? I mean, that's the very information that Newbrook has refused to provide in the South Africa action. And so why why what basis do we have to believe that GMS, who's not a party to the South African action, would have any such documents? I mean, in other words, why why doesn't that look exactly like an unauthorized fishing expedition? Well, in this case, the primary issue is whether Nadella improperly arrested the second vessel of appellees. So they arrested to give you a little bit of background. Nadella. I understand the background. What I'm trying to get at, right, is is why there are documents that why we should believe what is the good faith basis would be another way of asking it for believing that GMS has documents explaining the ownership structure of Newbrook and the various Falcon vessels. It would be because GMS is jointly, we believe upon information and belief, and we haven't got the discovery yet. So we're seeking to confirm this through the discovery. But GMS is jointly owned by the owner of Nadella. Nadella is owned by Sharma. And we believe also Sharma owns GMS. So if and why. OK, but that doesn't answer my question. Right. And I'll stop asking. And if you don't answer it, that's totally fine. But what that doesn't answer is what is the good faith belief that GMS has documents reflecting the ownership of Newbrook and the Falcon ships. Right. I mean, that's the part that's the part I'm having a hard time with. I understand you think they're related somehow, and I understand you think that that Sharma is the man behind the curtain. But but none of that suggests that that GMS knows what seems to be a closely guarded secret about the ownership of Newbrook. Well, the main point is we think that GMS might have information as to the intent and motive of Nadella, not of Newbrook, because that's that's our belief. It's the intent and motive of Nadella for wrongfully arresting the ship for the second time. So so so you agree that there's no reason to believe that GMS has documents about the ownership structure of Newbrook and the Falcon ships. Yes, it's not about that. That that would be information within Apple's possession. So we're not seeking that. We're seeking information about Nadella. Then tell me the first document request that you made. The first document request was all documents demonstrating a relation, affiliation or connection between the Falcon carrier and the Falcon confidence. The Falcon carrier was the initial. That's the vessel in which they're saying are associated with both of Apple's vessels as a basis to try and arrest them. Right. But they're saying that because of the because of some joint ownership. Right. And you're just you're saying they don't that they don't have this joint ownership. So so that's the there's three. It gets confusing because there's three Falcon vessels. There is the Falcon carrier, which they're trying to say both of the other Falcon vessels are related to. We strongly dispute that they're related to. And in fact, a prior South African court already ruled that they were not related. And unarrested Apple's vessel that was, we believe, improperly arrested initially. Also, this next release, the second release or the second arrest of appellate or Apple's vessel was also already released. And all that's pending is to determine whether there was a proper basis to determine by Nadella that this vessel should have been arrested based on it being, quote, associated with the Falcon carrier. So the ultimate week, if it was as to whether there's an association between the Falcon confidence and the Falcon, the other Falcon vessel owned by Apple's. No, that's not the issue. It's whether they're associated with the Falcon carrier, which was Nadella's vessel. That that's the issue. So they could have information regarding that. I don't understand. That's that's what I'm that's what I'm trying to get at, because all the question is, I understand it ultimately goes back to the father and son and whether they're fully separate or not. And I don't know whether they are or not, but I understand the argument. But the question is whether the father and son have overlapped by virtue of their business dealings or they're separate. Right. But you're asking for GMS to provide documents that demonstrate whether there's an overlap or not. That's information that only you have. We have information as to the Falcon confidence and the Falcon traveler. Those are Apple's vessels. The Falcon carrier is not Apple's vessel. We have no information that is information that would presumably be in the possession of Nadella because Nadella arrested Apple's vessels under the sole notion that the Falcon carrier was associated to the Falcon traveler, which was the first arrest that was set aside by the South African court. And then also the Falcon confidence, which was the second vessel that's subject to the pending South African proceeding. So we don't have information about the Falcon carrier. And we strongly dispute that either of our vessels are jointly owned or in any way associated with the Falcon carrier. And am I correct in saying the reason that you make that argument is because one of them is owned by the father. What two of them are owned by the father and one of them is owned by the son. And that's the divide. Well, the divide, I believe, is that the Falcon carrier was owned by, I believe it was the father. And then the two latter vessels, the ones that were improperly arrested, in our view, and the first one was already adjudicated as improperly arrested. So Nadella took the position by the son. Right. And the question is, are the but the father and son have significant financial overlap. And so the question is whether that overlap gives them a connection or not. I mean, that doesn't seem like a hard. I mean, I understand the question, but I don't understand is what in the world GMS possibly could have to do with that question. The financial relationship between a father and son, GMS doesn't seem to have anything to do with. My understanding is that there has been as as predicated in the prior South African proceeding, not the pending one, but the prior one in which the first vessel was released as not being related. My understanding is that the evidence showed that there was no association because there was a great divide between the father and son. And there was only one overlapping issue of ownership. And that was a joint mortgage from a long time ago, which was insufficient to show that there was actually an association between the two. And that that's going to be what's litigated in South Africa in the current action. I totally understand that. What what I'm trying to ask you, though, is why. And I don't I don't need to answer it again because I think you've answered it to say it's not right. But why GMS or whatever the name of the group is, GMS has any information about the father and son relationship, why the documents are at GMS? And I apologize if I misspoke before, Your Honor. We we don't think that they would have any information about why the the our two vessels are related. But we think they could have information regarding why the the Falcon carrier, which is the vessel Nadella arrested our vessels as being associated with. Right. That's Nadella's vessel. So tell me. And then I want you to go to something else. But tell me real quick, what why is it what is the good faith basis to believe that GMS would have information about the relationship between the father and son? We don't believe that they would have information about the father and son. We believe that GMS, as the registered agent of Nadella, would have information about the Falcon carrier and information about why Nadella chose to arrest both of these vessels. That's what we're trying to figure out. Why did Nadella choose to arrest both of these vessels? That's what we're trying to figure out. And it was based on a purported relationship between the other unrelated vessel, the end and our vessels. And we want to know what was the subjective and objective basis for Nadella arresting these vessels that that's what we're trying to figure out through discovery. And we're permitted to seek this discovery from a witness. That's the entire point of Section 1782 is to allow witness discovery and to allow parties to obtain documents and testimony for use in a foreign proceeding through third party witnesses. So that's what we're seeking to obtain. And we believe that the district court did not abuse its discretion in ordering that relief in this case. Ms. Finley, can I ask a question? So so with respect to the document requests and the notice of deposition, what what what do the the requests for documents related to the corporate governance of Nadella and and related requests have to do with with this dispute? We're trying to figure out more information about Nadella so we can obtain evidence to show what might have been their motive and intent to arrest these vessels. That's what we're trying to obtain. There's also a pending unclean hands defense down in the foreign proceeding. And so we're trying to determine if how to support that defense and evidence to support that defense, because we believe that it was done with unclean hands because they arrested two vessels. One after already being adjudicated by a prior South African court that the vessel should have been released from arrest. It wasn't properly arrested, not subjectively, but objectively. So I thought I thought one of the sort of the pronounced or announced publicly announced motives for seeking these documents was to perhaps litigate a separate action against a third party down in Nevis. Is that right? Yes, your honor. That was one of the initial intentions in the initial 1782 application. The district denied that relief, but did permit us to go forward as to the pending proceeding. And as to all as to all of the as to all of the requests, because that's what struck me as odd. I thought that the judge, Berdard, the court, the district court in rejecting your ability to pursue this discovery with respect to the third party action would have severed any requests that were relevant to that third party action. But it seems like he thought, and maybe you can clarify this to me, that the district court thought that all all these documents, even if not relevant for purposes of use in Nevis, were relevant for use in the South African action. Is that how you see it? I see it as the district court did not abuse its discretion in determining that these documents were relevant for both. Now, he denied our ability to go forward as to the contemplated action, but he said that these document requests in the deposition topics are relevant to both because they're all. That seems like that seems like an empty, empty order, because once you get the documents, you can use them for any any and all purposes. So I don't I don't know what that distinction means in this case. You could use them for a different purpose, but either way, they would be objectively valid as a basis to obtain it through this section 1782 proceeding. And the court actually considered whether it should trim the discovery request based on its own ruling that the contemplated action was not a proper basis for section 1782 relief. And it decided not to. And it did not abuse its discretion in deciding not to, because it found that this would still be relevant for use in the pending foreign proceeding for which it was permitted to go forward. Where can I find the court's analysis on that point that where you say the district court considered trimming and chose not to because it found that it was relevant to both? Yes. Yes, your honor. I will cite you to the district court's order at page 14, in which the district court found that GMS acknowledges GMS actually conceded in its motion. But I'll just I'll cite the exact quote for your honors. GMS acknowledges in its motion that the documents relate to the South African action and does not otherwise explain why such requests are unduly intrusive or burdensome. That is the order at page 14, citing to GMS's own discovery motion at page 18. So actually, GMS somewhat conceded this issue below in its motion, and we would argue did not properly preserve the issue for appeal based on that. This is what the district court found, and it cannot be viewed as an abuse of discretion in this case based on the facts and circumstances. These all of these documents could be used and will be used in the foreign pending proceeding when we're finally able to get them. That's our intent, is to show that Nadella wrongfully arrested this second vessel, yet another unassociated vessel with the falcon carrier. Can you address the point that, at least in significant part, these are all requests for information about Nadella? So Nadella's intent, Nadella's actions, Nadella's structure, Nadella's this. And Nadella is the party in South Africa, and we typically think of 1782 as for non-party discovery. So if you want party discovery, you get it in the actual litigation. And so you are entitled under South Africa law to make requests of information from Nadella. And you did or didn't do it or whatever, but that's up to South Africa. But courts have been really hesitant, it seems rightfully to me, to allow you to come to here to a third party and request not evidence from the third party, but evidence about the party that's at issue in South Africa. But why shouldn't that be a concern for us here? So Your Honor correctly pointed out that this exact issue is dealt with in the discretionary factors and not the initial required statutory factors. So initially, this goes to a discretionary issue, and again, the abuse of discretion that we say did not exist here in this case. Well, not necessarily, right? Because the question is whether the party is in the district. And if I read your request, the request I'll say, Nadella's this, Nadella's that, Nadella's the other thing, and Nadella's not in this district. So I think it could well fall under the first four factors that are mandatory. I get some courts have treated it under intel, but when you request Nadella's information, Nadella's not in this district. But we are permitted to seek, applicants under Section 1782 are permitted to seek witness discovery. That's the entire point of the congressional statute. The congressional intent of the statute is for witness discovery to be obtained, and we can obtain it about a party in a foreign litigation. That's the whole point, is that you want evidence and information about a party in a foreign litigation. And that's supported by Kyobel v. Sam Calden v. Corvass, Swain, and Moore. That's a Second Circuit case in which they declined to consider the principal-agent relationship or whether documents held by a subpoenaed party belong to a foreign party. It's also supported by Mies v. Buter, which is Second Circuit, explaining that the court should not read into Section 1782 requirements that are not rooted in the text. So we are permitted to seek information about Nadella, but we are seeking it undisputedly from GMS, who is, again, conceded to be located in the district. So that statutory requirement is satisfied. And as far as the discretionary factor about whether we're seeking it from a party, we are not seeking information from a party. We're seeking information about a party, which is what typically happens in Section 1782 proceedings. You want to seek information about a party so you can bolster claims and or defenses in that action. And that's what we're seeking to do here. Now, GMS cites Schmitz v. Bernstein-Leibhardt v. Lipschitz, Second Circuit case, in which the Second Circuit affirmed the district court because it did not abuse its discretion based on the facts. And they tried to bolster their argument on this exact issue using that case. But importantly, in that case, the German Ministry of Justice and the prosecutor specifically requested that 1782 relief be denied. So it showed that the foreign court was not receptive to judicial assistance. So that was the real reason that that was denied. And, again, the primary ruling in that case was affirming the district court and determining that it did not abuse its discretion, which we believe should be done here as well. There is no reason for the court to go beyond the subpoena to see who we're seeking the information from. To the extent they don't have the information, if that's what it is, they can obviously respond to the discovery and say, we don't have the information. But now it seems that they're just trying to forestall even responding to the discovery. And this is discovery that was properly issued by the court, and there was no abuse of discretion in doing so. Can you talk just for a second about the merits of the service of prostitution issue? I understand that you want to claim it's an interlocutory order that somehow doesn't get wrapped up in the final decision here to order discovery. But can you tell me just a minute what your argument is on how this is personal service on GMS? And I assume you're not alleging that you have actually served Mr. Schwarma. No, we are not. Correct, Your Honor, we have not yet. Just make sure I just want to make sure I understand your argument with respect to the personal service of GMS. In regards to the personal service of GMS, first, we believe that this issue should be dismissed from this appeal for lack of jurisdiction. That's held in numerous case law from this court, including Naranjo, Dury v. Dury, Green v. Mills, specifically finding that an issue of improper service is not a final or otherwise appealable order. OK, well, that's what I think it is. So go for it. Go to the mayor. Alternatively, please request that the court affirm the district court because it did not grossly abuse its discretion resulting in fundamental unfairness. That's the standard that's cited by GMS. And it's citing from the Eighth Circuit's precedent because there's no precedent from this court on this issue. But we think that it is clear that there was no abuse of discretion resulting in fundamental question. The question is whether personal and it strikes me the question is whether personal service is required. The statute one might think or at least I might think requires personal service. And so if it requires personal service and that wasn't done, then the standard doesn't matter a whole lot. So what why do you think there was personal service done? That's maybe maybe get away from the jurisdictional and standard review. Tell me why, again, on the merits, you think personal service happened. First, we would contend that personal service is not required of a subpoena under Rule 45. Most of the courts in the Fourth Circuit have held that personal service of a subpoena is not required. There's a majority view and there's a minority view in this regard. And the majority of courts in the Fourth Circuit have held that. Your Honor, I see my time has expired. May I have. We understand that argument. Maybe go to the next. I'm good. I tried the best I could. Oh, no, I want to continue to answer. I just wanted to ask for leave because I saw my time was expired. So in the event that the court determines that personal service is required, we had a process server. Applebee's had a process server that served GMS at its office location in Maryland on the third attempt of service. He handed the subpoena to the employee of GMS at its office via process server service. So that should be deemed personal service in this case. And the district court went through a very in-depth analysis about why a service was appropriate in this case. And we believe that there was no gross abuse of discretion in this regard, Your Honor. Do you have any further questions for me? I don't think we do. Thank you very much. Thank you. Do you have any rebuttal? Sorry. Do we have further questions? No, I don't think so. Counsel, do you have rebuttal? Very briefly, Your Honor. Basically, I just want to address two or three different things. They all say that I'm going to try to do my best. Two or three things that were identified. When you go back and look at the petition in this particular case and the reasons why the petitioners, the appellees in this case were seeking this information, it was for two reasons and two very distinct separate reasons. They were looking for the Nevis. The Nevis contemplated action that Judge Berdard rightfully rejected was so they could pursue their wrongful arrest arguments. They could pursue some idea that they could go after other parties potentially responsible in a wrongful arrest. It's a contemplated action. Judge Berdard rejected it. It is rejected. That's all of the evidence relevant to a wrongful arrest. What the petitioner said is the other the other reason why they wanted this information was relevant to the South African action. And in the South African action, the issues were whether there is a relationship between these vessels. And that's the issue that was involved. It wasn't an issue relative to wrongful arrest. I completely understand that at the end of the day, the appellees in this case were seeking as much information as they could about Nadella and all its associated parties and ownerships so that they could pursue a wrongful arrest. Unfortunately, wrongful arrest is no longer at play in this particular circumstances because that was that was rejected. Once that was rejected, and if you look at the petition that talks about the South African action and why they need it, and it's clear in the petition, they're seeking that information to understand what the relationship is between these different vessels. It's very clear what's going on. The other thing that I want to make sure that the court notes in the April 28th, 2021 decision that we believe the court should take judicial notice of. That court expressly rejected the notion that there was this concept of a wrongful arrest. South Africa is a little different than the United States. All they refer to is dirty hands, which is sort of the equivalent of the unclean hands concept and whether there's a wrongful arrest. And in that decision in April 28th, paragraph 53, the court actually specifically said that the evidence, the ability to expand and get this additional discovery that they're looking for to try and demonstrate somehow that they should have additional time or additional rights to answer why they say there's no affiliation between these two vessels. The court said it may very well have simply been a misguided attempt to obtain evidence in order to bolster the respondents. In that case, the appellees, the same as the appellees, reliance on the, quote, dirty hands argument. The court in South Africa rejected the very evidence that they're asking to get in this case. Now, it rejected the concept that there was a wrongful arrest. It rejected the concept that there was no affiliation at this point in time between these vessels. And in light of that, there should be no basis under 1782, whether it's under the actual statute itself or whether it's under those discretionary factors. Why, in fact, this this particular subpoena should be enforced and go forward. I completely appreciate the fact that Judge Berdard did not have that April decision at the time of his ruling. We have it now. And it's something that certainly we can't ignore in the process with the wall. I'm sorry to ask a question. So you don't. I want to make sure I get this right is when Judge Berdard made the distinction between the South African action and the Nevis action. You don't have any question that he intentionally decided that irrespective of that distinction, that the entire swath of documents and the topics that were proposed in the deposition were in his mind still relevant to the South African action. That was his ruling. You agree with that? I do agree. That was his ruling. But I don't believe that he made the distinction. Fundamentally, Your Honor. I obviously disagree with Judge Berdard's decision, which is why we're here. I don't believe that they were even related from that standpoint. But I also agree. He did not make a distinction. He did not examine or explain in any way. And neither did petitioner as to why those additional information about Nadella was relevant to the issues in the South African action. He did not make that distinction. Thank you. With that, I have nothing further. Thank you. Thank you very much.
judges: Diana Gribbon Motz, Albert Diaz, Julius N. Richardson